UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Steven Jamal Hare,

        Defendant.
_____/

Case. No. 23-cr-20571

Hon. Mark A. Goldsmith

## GOVERNMENT'S SENTENCING MEMORANDUM

At only 30 years old, Steven Hare has spent almost all his adult life in prison for violent crimes. Almost immediately after being placed on parole, Hare chose to obtain and possess a firearm, despite his status as a convicted felon. While unlawfully possessing this firearm, Hare got into a car accident with a federal agent, which ultimately led to the discovery of Hare's criminal behavior.

Hare pleaded guilty to being a felon in possession of a firearm for his conducting arising from that incident. Now, the United States recommends a sentence at the middle of Hare's guideline range, 78-months imprisonment, followed by a two-year term of supervised release. Such a sentence would be "sufficient, but not greater than necessary, to

1

comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. FACTUAL BACKGROUND

### A. Offense Conduct

On May 10, 2022, a DEA special agent was driving a government issued vehicle when she turned westbound on Mack Avenue from the Chrysler Service drive. As she moved to complete her turn, a white SUV hit her vehicle, effectively sideswiping her. Both the SA and the driver of the SUV pulled over. The driver of the SUV was Hare.

Hare began speaking to the SA in an aggressive manner, which continued as she advised him she was going to call the police. He suggested he and the SA move their cars to where he claimed his sister lived in an apartment complex across the street. The SA refused. While she was on the phone with the police, Hare called a friend who later appeared on scene claiming to be Hare's sister. The SA noticed Hare's vehement statements that he needed to go to his sister's apartment right then. It was shortly after when she noticed something protruding from his front pocket. Based on her training, she identified the object as a firearm. Then, Hare suddenly started jogging in the direction of the

2

apartment complex, away from the scene of the accident. The SA notified dispatch that Hare was fleeing and was possibly armed.

Hare fled to the house of the friend who later appeared at accident scene and entered the residence. Minutes later, Hare exited and was taken into custody a short time later. Detectives maintained surveillance on the front and rear of the residence, while they applied for a state search warrant. During surveillance they observed a female exit the residence with a large black purse and place it inside of a vehicle parked out front. Surveillance was continued until marked units were able to assist in securing the scene pending the search warrant.

Officers eventually searched the vehicle and found a Smith & Wesson, SD40, .40 caliber pistol. Later, Hare's DNA was discovered on the firearm.

Hare was arrested walking back to the scene. He was placed inside an MSP scout car, which had video recording. Hare answered a phone call from a female friend, who could be seen sitting on a bench in front of the scout car. Hare told his friend that he put his gun in her bedroom, and said he had to use the bathroom.

### B. Hare is connected to a murder

On May 10, 2022, the Michigan State Police had already been surveilling Hare in relation to a homicide investigation and observed much of what occurred. On April 20, 2022, the Inkster Police Department found an adult female victim murdered in a residence. Police obtained surveillance video from the residence and an adjacent library. The video showed a black four door sedan arriving at the residence and parking on the east side of the street. The rear passenger exited and moved towards the apartment complex. The driver and front seat passenger switched positions and left the area. The sedan was later discovered to be registered to Hare's mother at Hare's parole address.

Police obtained a search warrant to access the phones of two individuals, including Hare and the suspected shooter. Data from the phones allowed police to track the movements of Hare and the other person. The front passenger of the car that drove to the scene where AV1 was killed was identified as Hare and phone data places the suspected shooter near Hare's residence after the shooting. Hare's phone also contained pictures of firearms in a bedroom that matched other photos of Hare in the same room.

## II. SENTENCING GUIDELINE CALCULATION

On January 17, 2023, Hare pleaded guilty to one count of Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(1) without a Rule 11 agreement. PSR ¶ 5. The United States Probation Department calculated Hare's criminal history category to be V and offense level of 21, with a resulting sentencing guideline range of 70 to 87 months. PSR ¶ 57. Neither party objected to that calculation.

## III. APPLICATION OF 18 U.S.C. § 3553(a)

Congress has provided through 18 U.S.C. § 3553(a) the relevant objectives and factors to be considered by sentencing courts in imposing a sentence that is "sufficient, but not greater than necessary." Those objectives are: (i) the nature and circumstances of the offense, and the history and characteristics of the defendant; (ii) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (iii) the kinds of sentences legally available; (iv) the Sentencing Guidelines; (v) Sentencing Commission policy statements; (vi) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found

5

guilty of similar conduct; and (vii) the need for restitution. The most relevant factors are set forth below.

### A. Nature and Circumstances of the Offense and the History and Characteristics of the Offender, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of Hare's offense, combined with his history and characteristics weigh in favor of a 78-month sentence. Hare's unlawful possession of a firearm occurred right after he was released on parole after serving a lengthy prison sentence. What's more, Hare was already being surveilled by law enforcement when he got into a car accident with a DEA agent because he had been connected to a murder. Thus, Hare's unlawful possession of a firearm was not done in a vacuum. Hare committed this offense while choosing to continue to engage in unlawful, dangerous behavior.

In a way, Hare's individual characteristics, specifically his childhood and family history, mitigate his behavior to a point. Hare had a difficult childhood, and he lost a brother to a tragic accident. His mother was a single mother working to support multiple children, but she could not adequately do so. There is inconsistent information as to whether Hare knew his father, but he reports that the father-figure he did know ended up in dying in prison.

Hare began engaging in violent criminal behavior when he was still just a child, and at only 17, he shot two people near a high school. It was this conviction that sent Hare to the Michigan Department of Corrections in 2011 for what would end up being a nearly 11-year sentence. While in custody, Hare was convicted of two more violent felonies, including the unlawful possession of a weapon while in custody and assault with intent to do great bodily harm. While in MDOC, Hare incurred 25 misconduct violations, on top of the two additional felony convictions. Hare was released on parole in January 2022 but was back in custody for a parole violation when he was found to be possessing the firearm in this case. Hare served approximately 15 months for violating his parole by possessing the firearm in this case. Balancing Hare's past with the nature of this offense, these factors weigh in favor of a 78-month, custodial sentence.

### B. Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment, 18 U.S.C. § 3553(a)(2)(A)

Even though Hare's unlawful possession of a firearm is a "status" offense in this instance, it is still a serious crime. Hare unlawfully possessed a firearm in the face of several, violent felony convictions. In doing so, not only did Hare violate the law disallowing his possession,

but he showed a willingness to continue down a dangerous path of lawlessness that risked the lives of people in the community.

A custodial sentence of 78 months would reflect the seriousness of this offense, justly punish Hare, and promote respect for the law. Such a sentence would particularly address promoting respect for the law where Hare unlawfully possessed the firearm despite the prohibition on him doing so and in defiance of Court orders.

### C. To Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant, 18 U.S.C. § 3553(a)(2)(B)-(C)

A middle of the guideline-range, custodial sentence serves the interests of deterrence and the need to protect the public. For general deterrence, this sentence sends an important message that possessing firearms as a prohibited person is a serious offense that merits serious penalties, including imprisonment where appropriate, such as here.

A custodial guideline range sentence also serves the need for individual deterrence. Hare's prior state sentences have done little to deter him from continuing to engage in criminal activity. Here, a federal custodial sentence at the middle of Hare's guideline-range contemplates the next step in punishing Hare's behavior. This sentence will also give the Hare the opportunity to take advantage of the multitude of programs

offered by the Bureau of Prisons. Because of his past, and arguably his unwillingness to change, Hare has not found a positive direction in which to move his life. During his custodial sentence in the BOP, Hare will be able to learn new skills that he can employ when he is released to take his life in a positive, productive direction, free of violence and activity that endangers the lives of others. Thus, a 78-month sentence is a sentence that is sufficient but not greater than necessary considering his criminal history and the nature of this offense.

## IV. CONCLUSION

For the foregoing reasons, the Government respectfully recommends that the Court sentence Hare to 78 months in custody, followed by two years of supervised release.

Respectfully submitted,

DAWN N. ISON
United States Attorney

/s/ Tara M. Hindelang
Tara M. Hindelang
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9543
Tara.Hindelang@usdoj.gov

Dated: May 8, 2024

## Certificate of Service

I hereby certify that on May 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

/s/ Tara M. Hindelang
Tara M. Hindelang
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9543
Tara.Hindelang@usdoj.gov
